CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 22 2011

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JASON JEROME WATLINGTON, | ) | CASE NO. 7:11CV00270 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION |
| vs. | ) | |
| | ) | |
| DANVILLE ADULT DETENTION CENTER, | ) | |
| | ) | By: Glen E. Conrad |
| | ) | Chief United States District Judge |
| Defendant. | ) | |

Plaintiff Jason Jerome Watlington, a Virginia inmate proceeding pro se, has filed this civil rights action, pursuant to 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343. In his complaint, Watlington alleges that during his detention at the Danville Adult Detention Center (ADC), officials wrongfully convicted him of a disciplinary charge related to a furlough that resulted in a loss of good conduct time. As relief in this action, he asks for reversal of the disciplinary conviction, restoration of the lost good conduct time, and compensation "for being harassed daily." Upon review of the record, the court finds that the complaint must be summarily dismissed.

I

Watlington alleges the following sequence of events on which he bases his claims. As part of his effort to obtain "school release" so that he could finish some classes while serving his criminal sentence at the ADC, Watlington received a court-ordered furlough from March 9 to 14, 2011, for the authorized purpose of talking to school officials and getting necessary paperwork about the status of his classes. The order authorizing the furlough directed him to report back to the court no later than 8:45 a.m. on March 14, 2011. An ADC Inmate Furlough Order and Agreement that he signed notified him that "any activity not related to the reason this furlough is

granted may result in an institutional disciplinary charge, segregation, the loss of good time, or all of the above."

Once released for the furlough, however, Watlington discovered that the school was closed for spring break. He called the judge's secretary and was told to return to court on March 14, 2011 as scheduled, and he did so, thereafter returning to the ADC. Shortly after his return, Captain Davis wrote a disciplinary charge against Watlington for failing to obey a direct order to use the furlough only for obtaining school records, as indicated in the court order. ADC officials told Watlington that they had some information indicating that he went to the beach during the furlough and directed him to provide any evidence he had proving otherwise.

At the disciplinary hearing, Watlington told the hearing officer his story about the school being closed. He also stated that he was told he could not return to ADC until the end of the furlough.[1] The hearing officer found him guilty of disobeying a direct order, because Watlington was granted the furlough for the purpose of going to the school, but when he discovered the school was closed, he spent the rest of the furlough somewhere else. The officer expressly rejected his contention that he could not return to the ADC until the end of the furlough. As a penalty for the disciplinary conviction, the officer imposed 10 days of punitive segregation and the loss of 15 days of good conduct time. The latter penalty lengthened Watlington's term of confinement, moving his projected release date from August 20, 2011, to September 4, 2011.

Watlington appealed the hearing officer's ruling to the warden, who upheld the hearing officer's decision. The warden reviewed the disciplinary hearing report and the inmate's file and spoke with Tommy Pruitt, the ADC program director, and found it clear that Watlington was

---

[1] At some point, Watlington also presented ADC officials with documentation indicating that the school was closed and that money had been withdrawn from his bank in the Greensboro, North Carolina area during the furlough.

2

notified by the Furlough Agreement that engaging in any activity not specifically related to the reason for the furlough could result in a disciplinary charge and penalties. The warden stated,

> Going to the beach had nothing to do with "going to school – to report to the court the status of your classes." You didn't do what you were released to do, and then did something not remotely related to the release reason.

(ECF No. 4, p. 7). Watlington alleges that Pruitt told him he would do "everything in his power to prevent [Watlington] from returning to school." (ECF No. 1, p. 3.)

## II

To state a § 1983 claim, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988). The court is required to dismiss any action or claim filed by a prisoner against a governmental entity or official if the court determines that the action or claim is frivolous, malicious, or fails to state a claim on which relief may be granted. 28 U.S.C. § 1915A(b)(1).

"Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690 (1978). To prove that a governmental entity, such as a local jail, is liable for constitutional violations committed by its employees, plaintiff must show that the entity's policy was "the moving force of the constitutional violation." Polk County v. Dodson, 454 U.S. 312, 326, 102 S. Ct. 445, 70 L. Ed. 2d 509 (1981).

The only defendant that plaintiff has named in this case is the ADC, a local jail. His complaint does not offer any indication, however, that the alleged due process violations

3

committed against him by jail employees were in furtherance of jail policy.[2] Accordingly, plaintiff's § 1983 claim is without factual or legal basis, and the court will dismiss the complaint without prejudice, pursuant to § 1915A(b)(1), as legally frivolous.

In any event, Watlington's allegations and submissions fail to state any constitutional claim against any jail official. When a defendant is lawfully convicted and confined to prison, he loses a significant interest in his liberty for the period of the sentence. Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). Nevertheless, state prison regulations may create liberty interests, which are limited to "freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). The Court in Sandin specifically found that because the disciplinary penalty of segregated confinement imposed in that case did not exceed similar, but totally discretionary confinement in either duration or degree of restriction, this penalty did not implicate any federally protected liberty interest and so did not trigger entitlement to federal procedural protections. Id. at 486-87. Under these principles, the brief term of segregated confinement Watlington received did not give rise to any federal procedural protections, as he fails to allege facts indicating that it imposed any "atypical and significant hardship" on him compared to ordinary life at the ADC.

On the other hand, where a prison disciplinary hearing may result in the loss of good time credits, due process requires that an inmate receive: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and

---

[2] Watlington previously filed a similar § 1983 complaint against the ADC, Case No. 7:11CV00242, suing the jail for denying him school release on the basis of race. By opinion and order entered May 31, 2011, the court summarily dismissed that action, because plaintiff failed to allege facts stating a constitutional claim against the defendant jail.

4

correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action." Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 454 (1985) (citing Wolff v. McDonnell, 418 U.S. 539, 563-67 (1974)). In order to comply with the minimum requirements of procedural due process, the findings of a prison disciplinary board must be supported by some evidence in the record, Hill, 472 U.S. at 454-55, and be made by an impartial adjudicator. Wolff, 418 U.S. at 570-71.

While Watlington was entitled to federal procedural protections before losing earned good conduct time, his allegations do not indicate that he was deprived of such protections. He does not complain that officials failed to notify him of the disciplinary charge well in advance of the hearing or that they denied him an opportunity to call witnesses or present documentation as evidence of his whereabouts and activities during the furlough. He does complain that officials had insufficient evidence to support a finding that he was at the beach. The hearing officer rested his decision, however, on his finding that Watlington knew he should return to the ADC if he could not visit school officials as authorized by the Furlough Agreement and the court's order and that he undertook other activities instead, which were not authorized. Whether Watlington went to the beach or not, the hearing officer's finding that he engaged in unauthorized activity was supported by the evidence in the record, namely, Watlington's documents proving the school was closed and his absence from the ADC for the duration of the furlough. Finally, Watlington fails to allege facts indicating that the hearing officer was not impartial. As he thus fails to demonstrate that he was deprived of any of the federally mandated procedural protections before losing his good conduct time, his allegations fail to state any constitutional claim related to his disciplinary conviction and penalties.

## III

For the stated reasons, the court concludes that the action must be dismissed without prejudice, pursuant to § 1915A(b)(1), as legally frivolous, because plaintiff fails to name a defendant subject to suit under § 1983. An appropriate order will issue this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 22⁰ day of June, 2011.

_____
Chief United States District Judge